UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEPHEN BUSHANSKY, <br><br> Plaintiff, <br><br> v. <br><br> PCSB FINANCIAL CORPORATION, JEFFREY D. KELLOGG, ROBERT C. LUSARDI, MATTHEW G. MCCROSSON, JOSEPH D. ROBERTO, WILLIAM V. CUDDY, JR., KEVIN B. DWYER, WILLARD I. HILL, JR., RICHARD F. WEISS, KARL A. THIMM, MICHAEL T. WEBER, and MARSHA GORDON, <br><br> Defendants. | Case No. _____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This action is brought by Plaintiff against PCSB Financial Corporation ("PCSB" or the "Company"), and the members of PCSB's Board of Directors (the "Board" or the "Individual Defendants") to enjoin the shareholder vote scheduled to authorize PCSB's acquisition by Brookline Bancorp, Inc. ("Brookline") (the "Proposed Transaction"), predicated upon the Defendants' violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9.

2. On May 24, 2022, PCSB and Brookline issued a joint press release announcing entry into an Agreement and Plan of Merger dated May 23, 2022 (the "Merger Agreement") to sell PCSB to Brookline. Under the terms of the Merger Agreement, PCSB shareholders will have the right to receive either of: (i) $22.00 in cash; or (ii) 1.3284 shares of Brookline common stock for each share of PCSB common stock owned (the "Merger Consideration"). The Proposed Transaction is valued at approximately $313 million.

3. On August 12, 2022, PCSB filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that PCSB stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Piper Sandler & Co. ("Piper Sandler"); (ii) the background of the Proposed Transaction; and (iii) Piper Sandler's potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as PCSB stockholders need such information to make a fully informed decision whether to vote in favor of the Proposed Transaction.

4. In short, unless remedied, PCSB's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. PCSB is headquartered in this District. Moreover, PCSB's common stock trades on the Nasdaq Capital Market, which is headquartered in this District, rendering venue in this District appropriate.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of PCSB.

9. Defendant PCSB is a Maryland corporation with its principal executive offices located at 2651 Strang Blvd., Suite 100, Yorktown Heights, New York 10598. PCSB is the bank holding company for PCSB Bank. The Company's shares trade on the Nasdaq Capital Market under the ticker symbol "PCSB."

10. Defendant Jeffrey D. Kellogg ("Kellogg") has been a director of the Company since 2011.

11. Defendant Robert C. Lusardi ("Lusardi") has been a director of the Company since 2012.

12. Defendant Matthew G. McCrosson ("McCrosson") has been a director of the Company since 2015.

13. Defendant Joseph D. Roberto ("Roberto") has been Chairman of the Board, President, Chief Executive Officer ("CEO"), and a director of the Company since its inception in 2017; and Chairman of the Board, President, and CEO of PCSB Bank since January 2012.

14. Defendant William V. Cuddy, Jr. ("Cuddy") has been a director of the Company since 2015.

15. Defendant Kevin B. Dwyer ("Dwyer") has been a director of the Company since 2013.

16. Defendant Willard I. Hill, Jr. ("Hill") has been a director of the Company since 2017.

17. Defendant Richard F. Weiss ("Weiss") has been a director of the Company since 2004.

18. Defendant Karl A. Thimm ("Thimm") has been a director of the Company since 2008.

19. Defendant Michael T. Weber ("Weber") has been a director of the Company since 2005.

20. Defendant Marsha Gordon ("Gordon") has been a director of the Company since 2018.

21. Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

22. Brookline is a Delaware corporation and registered bank holding company, with its principal executive offices located at 3551 7th Street, Moline, Illinois 61265. It operates as a multi-bank holding company for Brookline Bank and its subsidiaries, Bank Rhode Island and its subsidiaries, Brookline Securities Corp. and Clarendon Private, LLC. Brookline's shares trade on the Nasdaq Global Select Market under the ticker symbol "BRKL."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

23. The Company's wholly-owned and sole subsidiary, PCSB Bank, is a New York-chartered commercial bank. PCSB Bank has two wholly-owned subsidiaries: PCSB Funding Corp. ("PCSB Funding ") and UpCounty Realty Corp. ("UpCounty"). PCSB Funding, a Delaware corporation, is a real estate investment trust that holds certain mortgage assets. UpCounty, a New York corporation, holds title to real estate properties foreclosed upon by PCSB Bank.

24. PCSB Bank serves the banking needs of customers in the Lower Hudson Valley of New York State through its executive offices/headquarters and 14 banking offices located in Dutchess (two offices), Putnam (three offices), Rockland (one office) and Westchester (eight offices) Counties, New York.

25. PCSB's primary business activity is attracting deposits from the public and using those funds primarily to originate and purchase commercial real estate loans, business loans, and one- to four-family real estate loans and purchase investment securities.

26. On April 27, 2022, the PCSB Board of Directors declared a regular quarterly cash dividend of $0.07 per share, representing a 17% increase compared to the linked quarter, payable on or about May 27, 2022, to shareholders of record as of the close of business on May 13, 2022.

27. On April 28, 2022, the Company announced its third fiscal quarter financial results. Net interest income was $12.7 million for the quarter, an increase of 9.3% from the same quarter last year. Adjusted net interest income (non-GAAP) of $12.4 million for the current quarter was an increase of 9.7% from the same quarter last year. Average deposits were $1.56 billion for the current quarter, increased 2.8% and 11.2% compared to the linked quarter and same quarter last year, respectively. Reflecting on the results, defendant Roberto stated:

> We are extremely pleased with our third quarter and nine-month financial results which exhibited solid core earnings combined with strong loan and deposit growth despite continued economic uncertainty. Annualized loan growth excluding PPP loans was 10.0% for the nine months and 13.6% for the current quarter. I am encouraged by the increased opportunities to originate quality loans within our strong market footprint. We believe we are well positioned to take advantage of the increase in market rates because of our current elevated liquidity position, resulting from significant deposit growth, and expected loan and securities portfolio repricing opportunities. Of the $1.3 billion of loan balances, 15% are subject to daily or monthly repricing with another 4% scheduled to mature or re-price within the next 12 months; additionally, approximately 13% of our securities portfolio have adjustable rates, more than half of which are subject to re-pricing in the June quarter. I am proud of what our PCSB team has accomplished as we continue working to create sustainable value for our shareholders.

**The Proposed Transaction**

28. On May 24, 2022, PCSB and Brookline issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> BOSTON and YORKTOWN HEIGHTS, N.Y., May 24, 2022 (GLOBE NEWSWIRE) -- Brookline Bancorp, Inc. (NASDAQ: BRKL) ("Brookline") and PCSB Financial Corporation (NASDAQ: PCSB) ("PCSB") announced today they have entered into a definitive merger agreement whereby Brookline will acquire PCSB and its wholly owned subsidiary, PCSB Bank for approximately $313 million in cash and stock. Following the transaction, PCSB Bank will operate as a separate bank subsidiary of Brookline.
>
> Paul Perrault, Chairman and Chief Executive Officer of Brookline commented on the transaction, "I am pleased to announce the combination of PCSB and Brookline. This transaction represents a unique opportunity for Brookline to expand its banking operations into one of the country's largest deposit markets through the acquisition of a complimentary commercial banking organization." Mr. Perrault

continued, "PCSB has a high-quality loan portfolio, deposit base and talented employees, making it an excellent addition to our organization."

"We are truly excited to be merging with Brookline. Paul and his team have built an impressive regional financial services company with a bedrock culture of performance, service and support of their customers, employees and shareholders," said Joseph D. Roberto, Chairman, President and Chief Executive Officer of PCSB. "Partnering with Brookline will allow PCSB to deliver even more value to our communities and customers as we continue to expand in the lower Hudson Valley."

Under the terms of the merger agreement, stockholders of PCSB will receive, for each share of PCSB, at the holder's election, either $22.00 in cash consideration or 1.3284 shares of Brookline common stock for each share of PCSB common stock, subject to allocation procedures to ensure 60% of the outstanding shares of PCSB common stock will be converted to Brookline common stock. The receipt of Brookline common stock by stockholders of PCSB is expected to be tax-free.

**KEY FINANCIAL IMPACT HIGHLIGHTS**

- The transaction is presently valued at approximately $313 million in the aggregate, or approximately $20.72 per PCSB share, based on Brookline's common stock price of $14.96 at close on May 23rd, 2022.

- Anticipated double-digit EPS accretion of approximately 13% to Brookline's earnings per share (on a fully phased-in basis), excluding the impact of expected revenue enhancement opportunities.

- Expected IRR of approximately 15%, exceeding Brookline's cost of capital.

- Pro forma capital ratios of 8.6% TCE/TA and 13.0% Total Risk-Based Capital Ratio, estimated at close.

- Combined company total assets of $10.6 billion, loans of $8.5 billion, and deposits of $8.7 billion (as of March 31, 2022).

The combined organization will further establish Brookline as a premier commercial banking franchise in the Northeast with over $10 billion in assets, and will represent one of the few regional banks operating in the Boston, Providence and New York metropolitan markets. Brookline and PCSB have complementary business models focused on relationship-based CRE and C&I lending, which include an extensive suite of financial products and services.

Upon completion of the merger, PCSB Bank will retain its New York bank charter and Board of Directors and its headquarters will remain in Yorktown Heights. Brookline will select one PCSB director to join its Board of Directors. In addition, following the closing, Michael P. Goldrick, currently PCSB Bank's Executive Vice

President and Chief Lending Officer, will become PCSB Bank's President and Chief Executive Officer.

The transaction has been unanimously approved by the Board of Directors of both companies and is expected to be completed in the second half of 2022, subject to approval by PCSB stockholders, as well as regulatory approvals and other customary closing conditions.

Brookline was advised in this transaction by Performance Trust Capital Partners, LLC as financial advisor and Goodwin Procter LLP as legal counsel. PCSB was advised by Piper Sandler & Co. as financial advisor and Luse Gorman, PC as legal counsel.

**Insiders' Interests in the Proposed Transaction**

29. PCSB insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of PCSB.

30. Company insiders stand to reap substantial financial benefits for securing the deal with Brookline. Under the terms of the Merger Agreement, all outstanding Company options and restricted stock will vest and convert into the right to receive cash payments. The following tables set forth the cash payments that PCSB directors and executive officers who are not named executive officers will receive for their Company equity awards, upon closing of the Proposed Transaction:

| Name | Stock Options(#) | Cash-Out Value($) |
|---|---|---|
| Carol Bray | 54,495 | 141,687 |
| William V. Cuddy, Jr. | 44,662 | 166,589 |
| Kevin B. Dwyer | 44,662 | 166,589 |
| Marsha Gordon | 22,331 | 83,295 |
| Jeffrey Helf | 45,330 | 149,478 |
| Willard I. Hill, Jr. | 44,662 | 166,589 |
| Jeffrey D. Kellogg | 44,662 | 166,589 |
| Ruth Leser | 54,495 | 141,687 |
| Robert C. Lusardi | 44,662 | 166,589 |
| Matthew G. McCrosson | 44,662 | 166,589 |
| Michelle Nicholas | — | — |
| Dominick Petramale | 45,330 | 149,478 |
| Richard Petrone | 54,495 | 141,687 |
| Karl A. Thimm | 44,662 | 166,589 |
| Clifford Weber | 54,495 | 141,687 |
| Michael J. Weber | 44,662 | 166,589 |
| Richard F. Weiss | 51,412 | 191,767 |

| Name | Unvested Restricted Stock(#) | Estimated Restricted Stock Dollar Value($) |
|---|---|---|
| Carol Bray | 8,718 | 191,796 |
| William V. Cuddy, Jr. | 7,600 | 167,200 |
| Kevin B. Dwyer | 7,600 | 167,200 |
| Marsha Gordon | 3,800 | 83,600 |
| Jeffrey Helf | 11,012 | 242,264 |
| Willard I. Hill, Jr. | 7,600 | 167,200 |
| Jeffrey D. Kellogg | 7,600 | 167,200 |
| Ruth Leser | 8,718 | 191,796 |
| Robert C. Lusardi | 7,600 | 167,200 |
| Matthew G. McCrosson | 7,600 | 167,200 |
| Michelle Nicholas | — | — |
| Dominick Petramale | 11,012 | 242,264 |
| Richard Petrone | 8,718 | 191,796 |
| Karl A. Thimm | 7,600 | 167,200 |
| Clifford Weber | 8,718 | 191,796 |
| Michael J. Weber | 7,600 | 167,200 |
| Richard F. Weiss | 8,950 | 196,900 |

31. The following table sets forth the cash payments PCSB's named executive officers will receive for their Company equity awards, upon closing of the Proposed Transaction:

| Name | Stock Options ($) | Restricted Stock Awards ($) |
|---|---|---|
| Joseph D. Roberto | 321,155 | 1,086,976 |
| Scott D. Nogles | 188,916 | 639,408 |
| Michael P. Goldrick | 94,458 | 319,704 |

32.     Additionally, Defendant Roberto is a party to a Supplemental Executive Retirement Plan with the Company, which will be terminated in connection with the Proposed Transaction, and defendant Roberto will receive an estimated lump sum cash payment of $3,302,158.

33.     Moreover, if they are terminated in connection with the Proposed Transaction, PCSB insiders stand to receive substantial cash severance payments in the form of Golden Parachute compensation, as set forth in the following table:

| Executive | Cash($)[1] | Equity($)[2] | Pension/ NQDC($)[3] | Other($)[4] | Total ($) |
|---|---|---|---|---|---|
| Joseph D. Roberto | $3,015,109 | $1,408,131 | $ — | $465,246 | $4,888,486 |
| Scott D. Nogles | $1,441,420 | $ 828,324 | $247,755 | $285,246 | $2,802,745 |
| Michael P. Goldrick | $ 28,749 | $ 414,162 | $165,170 | $285,246 | $ 893,327 |

**The Proxy Statement Contains Material Misstatements and Omissions**

34.     The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to PCSB's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

35.     Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the inputs and assumptions underlying the financial analyses performed by the Company's financial advisor Piper Sandler; (ii) the background of the Proposed Transaction; and (iii) Piper Sandler's potential conflicts of interest. Accordingly, PCSB stockholders are being

asked to vote in favor of the Proposed Transaction without all material information at their disposal.

***Material Omissions Concerning Piper Sandler's Financial Analyses***

36. The Proxy Statement describes Piper Sandler's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Piper Sandler's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, PCSB's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Piper Sandler's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to PCSB's stockholders.

37. With respect to Piper Sandler's *Pro Forma Transaction Analysis*, the Proxy Statement fails to disclose the specific accretion and dilution to Brookline's estimated earnings per share (excluding one-time transaction expenses) in the years ending December 31, 2022, through December 31, 2025, and Brookline's estimated tangible book value per share at close of the Proposed Transaction.

38. The omission of this information renders the statements in the "Opinion of PCSB's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

39. The Proxy Statement omits material information regarding the sale process leading to the Proposed Transaction.

40. For example, the Proxy Statement sets forth that six institutions signed confidentiality agreements that "included non-disclosure provisions and standstill provisions that, subject to certain exceptions, prohibits [these] counterpart[ies] for 12 months from the date of such agreement, from offering to acquire or acquiring PCSB, and from taking certain other actions, including soliciting proxies, without the prior written consent of PCSB and including a provision that prohibits [these] counterpart[ies] from asking PCSB to waive such standstill arrangement." *See* Proxy Statement at 40.

41. The Proxy Statement fails, however, to disclose the certain exceptions that would allow these six counterparties from offering to acquire or acquiring PCSB, and from taking certain other actions, including soliciting proxies or whether these six potential acquirers are precluded from making an overbid for the Company based on the don't-ask-don't-waive ("DADW") standstill provisions included in the confidentiality agreements.

42. Additionally, the Proxy Statement sets forth, as a reason for the recommendation of the Proposed Transaction by the Board, the Board's view that, provisions of the merger agreement [] permit PCSB, under certain circumstances, to furnish information to and conduct negotiations with third parties regarding a business combination transaction, subject, in certain circumstances, to paying Brookline a $12.0 million cash termination fee." *Id*. at 43.  This representation by the Board is false or misleading with respect to the six potential acquirers who may be restricted from making a topping bid for the Company through DADW standstill provisions in each of their confidentiality agreements.  The Proxy Statement requires additional disclosure to clarify that absent the Company's decision affirmatively to waive the DADW standstill provisions in each of the confidentiality agreements, none of the parties to the confidentiality agreements can approach PCSB to request a waiver of the standstill in order to

make an overbid for the Company. *See Ancestry,* Consol. C.A. No. 7988 at 178-179 ("if the seller for some inattentive reason doesn't waive the non-waiver provision, and you don't tell the stockholders that, and you're also advertising that there is the ability for people to make a superior proposal, and then you're leading the stockholders to believe that the people who are legally precluded from even requesting a waiver are within the category of people who can make the offer, that strikes me as misleading, because it's not in fact the case. Because there's ten parties in the world who would have to breach an obligation in order to even request the ability to put on the table a potentially superior proposal. And people are voting in ignorance to that. It's not just an ordinary standstill").

43. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Piper Sandler's Potential Conflicts of Interest***

44. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, Piper Sandler.

45. The Proxy Statement sets forth that in the two years preceding the date of Piper Sandler's fairness opinion, "Piper Sandler acted as an agent for Brookline's share repurchase program." Proxy Statement at 55. The Proxy Statement, however, fails to disclose the fees received by Piper Sandler from Brookline for acting as an agent for Brookline's share repurchase program.

46. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47. The omission of this information renders the statements in the "Opinion of PCSB's Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

48. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of PCSB will be unable to make a sufficiently informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

49. Plaintiff repeats all previous allegations as if set forth in full.

50. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, considering the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

51. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresents and/or omits material facts, including material information about (i) the inputs and assumptions underlying Piper Sandler's financial analyses; (ii) the background of the Proposed Transaction;

and (iii) Piper Sandler's potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

52. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

53. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

54. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

55. Plaintiff repeats all previous allegations as if set forth in full.

56. The Individual Defendants acted as controlling persons of PCSB within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of PCSB, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

59. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, PCSB stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of PCSB, and against defendants, as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to PCSB stockholders;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  August 25, 2022

**WEISS LAW**

By _____
Michael A. Rogovin
476 Hardendorf Avenue NE
Atlanta, GA 30307
Tel: (404) 692-7910
Fax: (212) 682-3010
Email: mrogovin@weisslawllp.com

*Attorneys for Plaintiff*